IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARSHALL M.,[1] | Case No. 3:23-cv-00039-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Marshall M. ("Plaintiff") brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bray*, 554 F.3d at 1222 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court may not affirm the Commissioner's decision "simply by isolating a specific quantum of supporting evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* (citing *Garrison*, 759 F.3d at 1009). Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff was born in 1980, making him thirty-six years old on August 31, 2017, his alleged disability onset date.[2] (Tr. 257.) Plaintiff has two years of college education and has past

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-

PAGE 2 – OPINION AND ORDER

work experience as a project manager, laborer, cable installer, and at a transfer station. (*Id.* at 51, 57, 301, 317, 463-64.) In his application, Plaintiff alleged disability due to trigeminal neuralgia ("TGN")[3] causing severe chronic pain and affective disorder causing anxiety and depression. (*Id.* at 300.) Plaintiff also suffers from opioid use disorder in remission, encephalomalacia, and obesity. (*Id.* at 50.)

The Commissioner denied Plaintiff's application initially and upon reconsideration. (*Id.* at 167-69, 180-81.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 182.) Plaintiff and an impartial vocational expert ("VE") appeared and testified before an ALJ on July 23, 2021. (*Id.* at 69-100.)

On November 15, 2021, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 43-59.) On November 16, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

///

---

01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of December 31, 2019 (Tr. 48), reflects the date on which his insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before December 31, 2019, he is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

[3] "Trigeminal neuralgia is a chronic pain condition that affects the trigeminal or 5th cranial nerve, one of the most widely distributed nerves in the head and causes extreme, sporadic sudden burning or shock-like facial pain that lasts from a few seconds to two minutes per episode." *Stites-Mounts v. Kijakazi*, No. 1:22-cv-00630-SKO, 2023 WL 5021086, at *1 n.2 (E.D. Cal. Aug. 7, 2023) (simplified).

PAGE 3 – OPINION AND ORDER

## II.   THE SEQUENTIAL PROCESS

A claimant is considered disabled if the claimant is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

The claimant bears the burden of proof for the first four steps. *See Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 1148-49. The Commissioner bears the burden of proof at step five, where the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (quoting *Tackett*, 180 F.3d at 1100). If the Commissioner fails to meet this burden, the claimant is disabled. *See Garrison*, 759 F.3d at 1011.

## III.  THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 48-59.) At step one, the ALJ found that Plaintiff had not engaged in substantial

PAGE 4 – OPINION AND ORDER

gainful activity from August 31, 2017, the alleged onset date, through December 31, 2019, the date last insured. (*Id.* at 49.) At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: TGN; affective disorder; substance abuse, in remission more recently; encephalomalacia; and obesity. (*Id.* at 50.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.*)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) avoid even moderate exposure to extreme cold and head, vibration, fumes, odors, dust, and gases; (2) avoid work hazards, such as dangerous moving machinery and unprotected heights; (3) perform work under normal ambient lighting; (4) perform simple routine tasks; and (5) have occasional contact with the general public. (*Id.* at 52.)

At step four, the ALJ found that Plaintiff could not perform his past work as a project manager, laborer, cable installer, and at a transfer station. (*Id.* at 57.) At step five, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, such as a production assembler, cleaner, or warehouse checker.[4] (*Id.* at 58-59.)

///

///

---

[4] Plaintiff had previously filed several disability applications, which the Commissioner denied. (Tr. 46, 102-04, 257.) "When adjudicating the subsequent claim involving an unadjudicated period, adjudicators will apply a presumption of continuing nondisability and determine that the claimant is not disabled with respect to that period, unless the claimant rebuts the presumption." Acquiescence Ruling (AR) 97-4(9), 1997 WL 742758, at *3. The ALJ concluded that Plaintiff had rebutted the presumption but that the medical record nonetheless supported a finding that Plaintiff was capable of working with his new impairments during the period at issue. (Tr. 47.) Plaintiff does not challenge the ALJ's application of the presumption.

## DISCUSSION

Plaintiff argues that the ALJ erred by improperly rejecting his subjective symptom testimony relating to his TGN and by failing to include in the RFC that Plaintiff would miss at least two days of work per month due to flares of his TGN pain. (Pls.' Opening Br. ("Pl.'s Br.") at 4-9, ECF No. 27.)

I.   PLAINTIFF'S SYMPTOM TESTIMONY

   A.   Legal Standard

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison*, 759 F.3d at 1014 (simplified). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (simplified).

   B.   Analysis

There is no evidence of malingering here, and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (Tr. 53.) The ALJ was therefore required to provide specific, clear, and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163.

///

///

PAGE 6 – OPINION AND ORDER

### 1. Plaintiff's Testimony

Plaintiff testified that he suffered daily flares of his facial TGN pain from around five times daily on a good day to an average of around two dozen times daily. (Tr. 85.) The pain could last a few seconds or persist in bursts for a few hours. (*Id.* at 79.) It took Plaintiff five to ten minutes to recover from the briefest attacks of pain, and he estimated that on an average day he spent approximately four hours suffering from and recovering from pain flares. (*Id.* at 85.) Plaintiff represented that he suffered "bad days" approximately half of the week, and on those days he did not get out of bed. (*Id.*) Plaintiff described the pain as "shocking," "sharp," and compared the feeling to "lightning shocks[.]" (*Id.* at 79.) Plaintiff explained that, before his disability onset date, he had long periods of time with "very minimum" pain, but that his "pain came back with a vengeance" to the extent he had to quit his job. (*Id.* at 78.)

His treatment providers did not know what triggered the pain. (*Id.* at 80.) Plaintiff outlined that the pain could flare as a result of sudden light on his face, brushing his teeth, water from the shower hitting his face, eating hard foods, the wind outside, or stumbling or jarring steps while walking. (*Id.* at 83.) As a result, Plaintiff explained that he kept the house dark, he did not brush his teeth and was getting dentures, he took a sponge bath instead of a shower, he only ate soft foods, and he tried to stay inside. (*Id.* at 83-84.)

Plaintiff slept a lot to avoid feeling pain, and sometimes he had to cancel his doctor's appointments when he felt too much pain. (*Id.* at 309, 313.) Plaintiff described that talking was difficult and he avoided family gatherings. (*Id.* at 84.) Plaintiff did not cook for himself, beyond making cereal or microwaving food. (*Id.* at 309-10.) Plaintiff estimated that he could get up and do housework, such as doing the dishes, sweeping, and tidying, approximately two or three days a week and he could leave the house and walk his dogs approximately once or twice a month. (*Id.* at 86.) Otherwise, his wife helped take care of the dogs and did the cooking and shopping.

PAGE 7 – OPINION AND ORDER

(*Id.* at 310-12.) He watched documentaries and walked on the treadmill for five minutes at a time on good days. (*Id.* at 310.) Previously, he would "go metal detecting" and wakeboard but had not done so in years because he avoided going outside due to the wind. (*Id.* at 313.) He also could not mow the lawn because of the vibration. (*Id.* at 353.)

Plaintiff described treating his TGN through a number of surgeries. He explained that surgery had numbed his face so the right side "has next to no feeling" but left him with a "grinding," "buzzing," "constant pain." (*Id.* at 80.) He had tried many medications. (*Id.*) Further, Plaintiff had a nerve stimulator on his spinal cord that "help[ed] a little." (*Id.* at 90-91.) His provider had recommended a different stimulator that would go directly onto his trigeminal nerve, but Plaintiff's insurance had denied coverage. (*Id.* at 90-92.)

### 2.     The ALJ's Findings

The ALJ recounted Plaintiff's testimony, repeating Plaintiff's description of daily severe pain on the right side of his face and skull, triggers such as chewing, eating, walking, wind, turning his head, and any motion, numbness in his face and constant grinding and buzzing pain, trying various medications without improvement in symptoms, and difficulties conducting daily activities. (*Id.* at 53.) The ALJ acknowledged Plaintiff's testimony that Plaintiff barely left the house, slept all day and night to avoid feeling pain, did not cook for himself, needed help remembering to take his medication, was unable to walk his dog most days because the wind made his face hurt, and was unable to perform household chores. (*Id.* at 52.)

The ALJ reviewed Plaintiff's medical records, noting a 2017 MRI revealing abnormal enhancement along the right side of the surface of the pons near the origin of the right trigeminal nerve, a September 2017 gamma knife surgery "which provided about eight months of relief . . . but not total relief," October 2017 treatment for dizziness, lightheadedness, and numbness on the right side of his face, and a spinal cord stimulator implant. (*Id.* at 53, citing Tr. 1041, 1058, 1894,

PAGE 8 – OPINION AND ORDER

2913.) The ALJ acknowledged that Plaintiff's "medical impairments have worsened" since the state agency disability determination services medical consultants reviewed his records. (*Id.* at 55.)

In discounting Plaintiff's testimony, the ALJ concluded that Plaintiff's medical records do not support the severity of his alleged limitations during the period at issue. (*Id.* at 53.) The ALJ stated that Plaintiff's statements concerning the intensity, persistence, and limiting effect of his symptoms are not entirely consistent with the medical evidence and other evidence. (*Id.*) Further, the ALJ noted that Plaintiff swam, lifted weights, cared for a new puppy, hunted, hiked, and treasure hunted with a metal detector. (*Id.* at 51, 53, citing Tr. 1529, 1532, 1536, 1571, 1983, 2104, 2395, 2417-18, 2420, 2423, 2447, 2449, 2737.) The ALJ concluded that Plaintiff could perform a "wide variety of activities" despite his impairment. (*Id.* at 53.) In sum, the ALJ discounted Plaintiff's testimony based on (1) his activities of daily living and (2) the objective medical evidence.

### 3. Activities of Daily Living

#### a. Applicable Law

An ALJ may discount a claimant's testimony regarding the severity of symptoms based on activities that "contradict [the claimant's] other testimony" or "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *see also Burrell v. Colin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (explaining that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination" (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997))); *Garrison*, 759 F.3d at 1016 (stating that a claimant's activities have "bearing on [the claimant's] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations" (quoting

PAGE 9 – OPINION AND ORDER

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998))). Notably, however, there must be a meaningful inconsistency between the claimant's daily activities and the symptom testimony. *See Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (holding that the ALJ committed harmful error in discounting the plaintiff's symptom testimony and explaining that the plaintiff's "limited daily activities were not meaningfully inconsistent with her symptom testimony" (citing *Fair*, 885 F.2d at 603)).

### b. Disposition

Plaintiff argues that the ALJ did not point to evidence in the record of Plaintiff's participation in incompatible activities *after* the alleged onset date in August 2017. (Pl.'s Br. at 7; Pl.'s Reply Br. ("Pl.'s Reply") at 3, ECF No. 33.) Plaintiff also asserts that references in the medical record to activities inconsistent with his testimony were inaccurately recorded by his providers. (Pl.'s Reply at 3.) Specifically, he suggests that documentation of his hobbies was copy and pasted in a template and did not reflect Plaintiff's current activity level. (*Id.*) Finally, Plaintiff argues that his TGN symptoms fluctuated, such that limited participation in some activities is not inconsistent with his symptom testimony. (Pl.'s Br. at 7.)

The ALJ cited an April 7, 2017, note indicating that Plaintiff had a new puppy that he cared for and that he liked to swim and lift weights. (Tr. 51, 53, citing 2447, 2449.) The Court agrees that swimming and lifting weights in April 2017 is not a valid basis for rejecting Plaintiff's testimony regarding the time period after August 31, 2017, the alleged onset date. *See Gregory C. v. Comm'r, Soc. Sec. Admin.*, 426 F. Supp. 3d 660, 672 (D. Or. 2019) ("[T]he only time Plaintiff engaged in inconsistent recreational activities of kayaking and rafting was in 2006. In fact, in his February 2011 Adult Function Report, Plaintiff noted that he could no longer engage in kayaking and similar activities. Thus, those activities, considered singularly or in

combination with other activities, provide no basis for rejecting Plaintiff's testimony regarding the time period *after* June 2008.") (citation omitted).

The ALJ also cited identical notes from March 5, 2018 (Tr. 1529, 2423), March 19, 2018 (*id.* at 1532, 2420), and April 25, 2018 (*id.* at 1536), reflecting that Plaintiff's hobbies included metal detection, treasure hunting, and training dogs and that Plaintiff walks and lifts weights every other day for exercise; an April 25, 2018, note documenting walking and weightlifting every other day (*id.* at 2417-18); and April 2019 notes that Plaintiff's recreational activities included hiking, hunting, and walking (*id.* at 1571, 1983, 2395). The ALJ also cited a note reporting that Plaintiff "discussed his experiences at work and hunting in [A]laska[.]"[5] (*Id.*, citing Tr. 2104, 2737.)

In Plaintiff's function report, he explained that he previously had lived an active lifestyle and that, before his alleged onset date, he would "go metal detecting" and wakeboard but had not done so in years. (*Id.* at 313.) Plaintiff testified that, after his alleged onset date, he walked on the treadmill on good days and walked his dogs occasionally. (*Id.* at 86, 310.) Further, Plaintiff described fluctuating TGN symptoms. (*See id.* at 79, 85; *see also id.* at 1458, "Functional impairment is severe—when present it interferes with most, but not all, daily activities"; *id.* at 1706, noting good days and bad days; *id.* at 1734, "[Plaintiff] reports sometimes his pain [is] so severe that he curls up in a ball"; *id.* at 1736, "[Plaintiff] has been able to get out more and walk the dogs, which is huge for him regarding his pain management"; *id.* at 1738, noting that "when he feels good he gets out of the house and when he is in pain he is curled up in a ball in bed.") It is undisputed that TGN pain is sporadic. *See Elliott v. Life Ins. Co. of N. Am., Inc.*, No. 16-cv-01348-MMC, 2019 WL 2970843, at *3 (N.D. Cal. July 9, 2019) (explaining that "trigeminal

---

[5] The parties agree that Plaintiff has not worked since the alleged onset date. (Tr. 49.)

neuralgia 'is characterized by sudden attacks of severe, shooting pain in the face'") (citation omitted).

Because neither the ALJ nor Plaintiff's attorney asked Plaintiff about whether he continues to go metal detecting, treasure hunting, hiking, or hunting, there is little evidence in the record to confirm whether these notations in Plaintiff's medical records demonstrate that Plaintiff continued to engage in those hobbies or whether he merely wished to resume those activities if he could successfully manage his pain.[6] *See Brown v. Berryhill*, No. 16-cv-04022-EMC, 2017 WL 4417516, at *11 (N.D. Cal. Oct. 4, 2017) ("[T]he ALJ did not explore these issues [about the plaintiff's activities] at the . . . hearing. If he thought these statements might have been probative of [the plaintiff]'s credibility, he could have sought more information about them from her."). Similarly, no one asked Plaintiff about weightlifting. Thus, there is little information in the record about the nature of that exercise—for example, whether he lifted weights at home or at a gym, whether he used dumbbells or machines, whether he lifted a few pounds or hundreds, etc. *See Trevizo*, 871 F.3d at 682 ("[T]here is almost no information in the record about [the plaintiff]'s childcare activities; the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations."); *Ryabov v. Berryhill*, No. 3:16-cv-06001-TLF, 2017 WL 4546382, at *5 (W.D. Wash. Oct. 11, 2017) ("The record appears to contain only one reference to [the plaintiff]'s statement that she was near completing a social services degree. It contains no further information that would support the ALJ's inference that [the plaintiff]'s activities in pursuing that degree were inconsistent with her claimed symptoms:

---

[6] Plaintiff provided testimony from his wife and father to the Appeals Council explaining that Plaintiff stopped metal detecting in 2003 and that Plaintiff went hunting in Alaska once in 2002 and that Plaintiff's father has kept Plaintiff's hunting rifle locked in a gun safe since 2006. (Tr. 15, 26.)

whether the program was full- or part-time, whether it was in-class or online, how much work it required and of what kind. The ALJ did not develop a record on the issue.") (citations omitted).

As a result, the Court concludes that there is not substantial evidence in the record to support the ALJ's finding that Plaintiff continued to go metal detecting, treasure hunting, swimming, hiking, and hunting during the relevant period, and, given the limited record, walking and lifting weights are not meaningfully inconsistent with Plaintiff's testimony. *See Cruz v. Comm'r of Soc. Sec. Admin.*, No. 19-cv-04460-PHX-JJT, 2020 WL 3567033, at *3 (D. Ariz. July 1, 2020) (concluding that the ALJ erred by discrediting the claimant's testimony about her impairments, including TGN, based on her activities of walking for half an hour at a time, riding a bike, socializing, traveling, sewing, and playing with her grandchildren where she "'freely admits she is able to do a few activities on her good days' but maintains that 'unpredictable flares of pain and lack of sleep on bad days take hours to go away'"), *aff'd sub nom. Cruz v. Kijakazi*, No. 20-16651, 2021 WL 5357231 (9th Cir. Nov. 17, 2021); *Fullick v. Berryhill*, No. 17-cv-0051-TUC-BGM, 2018 WL 1466237, at *15 (D. Ariz. Mar. 26, 2018) (concluding that the ALJ erred by discrediting the claimant's testimony about her TGN based on her independence in her activities of daily living, ability to drive, shop, cook, carry light loads, and occasional walks outdoors for twenty minutes); *Brown*, 2017 WL 4417516, at *10 (concluding that the ALJ erred by discrediting the claimant's testimony about her TGN based on her ability to shop, prepare simple meals, walk two blocks a day, and attend weekly church services); *Ryabov*, 2017 WL 4546382, at *5 (concluding that the ALJ erred by discrediting the claimant's testimony about her TGN based on her ability to manage her self-care, cook, manage her money, attend weekly church services, shop, socialize, and study for a degree in social services).

///

PAGE 13 – OPINION AND ORDER

### 4. Objective Medical Evidence

Plaintiff argues that substantial evidence does not support the ALJ's conclusion that Plaintiff's symptom testimony was inconsistent with her medical record, and, regardless, objective evidence alone is not a clear and convincing reason. (Pl.'s Br. at 7-8.) The Court agrees.

The ALJ did not indicate which part of the medical evidence was inconsistent with Plaintiff's testimony about the severity of his symptoms. (*See* Tr. 53, 55.) The Commissioner argues that Plaintiff's pain improved with treatment and that his pain was well managed with medication and only returned when Plaintiff forgot to take his medication and when he relapsed into his substance abuse disorder. (Def.'s Br. at 5, ECF No. 29.) Two of the records that the Commissioner cites pre-date Plaintiff's alleged onset date. (*See* Tr. 957, 968.) More importantly, the Court may not search the record for *post hoc* reasons to discount Plaintiff's testimony. *See Wear v. Comm'r Soc. Sec. Admin.*, 158 F. Supp. 3d 1101, 1107 (D. Or. 2016) ("This Court cannot affirm a decision by an ALJ based on a *post hoc* rationalization of the ALJ's decision." (citing, *inter alia*, *Bray*, 554 F.3d at 1225)). Here, the ALJ did not indicate that Plaintiff's symptoms had improved with treatment nor that his symptoms only worsened with treatment noncompliance.

To the contrary, the ALJ acknowledged that Plaintiff's gamma knife surgery only provided a limited period of relief and that Plaintiff's medical impairments worsened after the state agency consultants reviewed his records. (Tr. 53, 55.) Indeed, the medical records are consistent with Plaintiff's testimony and reveal that Plaintiff's pain worsened. After his gamma knife surgery in September 2017, he sought medical attention for "possible complications post trigeminal surgery" (*id.* at 1040), the pain had resumed by March 2018 (*id.* at 1528), by July 2018, his pain was "not well controlled" with his medication (*id.* at 1745; *see id.* at 1740,

PAGE 14 – OPINION AND ORDER

indicating that pain "over all has been worse recently"), he suffered bad pain spikes in November 2018 (*id.* at 1554); and in January 2019, his pain had "improved but [was] not controlled" (*id.* at 1719). Throughout the rest of 2019, Plaintiff continued to report extreme levels of pain. (*Id.* at 1715-17, February 2019, he rated his pain eight out of ten and indicated he had not left his house recently; *id.* at 1698, in March 2019, Plaintiff rated his pain as nine out of ten; *id.* at 1692, 1689, in April 2019, seven out of ten; *id.* at 1681, May 2019, between eight to ten out of ten; *id.* at 1676, June 2019, seven out of ten; *id.* at 2109, July 2019, six out of ten but eight out of ten the previous few days.) In August 2019, Plaintiff received a spinal cord stimulator trial. (*Id.* at 1463.) At Plaintiff's September 2019 appointment, his provider documented that he was "crying and grimacing due to severe TGN pain." (*Id.* at 2100.) In September 2019, he received the permanent spinal cord stimulator. (*Id.* at 1470.) Following the implant, his pain improved but he continued to have "frequent daily flares." (*Id.* at 1474, 2298.) By December 2019, his facial pain had worsened again. (*Id.* at 1889.) After his date last insured, December 31, 2019, he continued to suffer severe pain. (*See, e.g.*, *id.* at 2520, 2568, 2648, 2656, 2660, 2674, 2679, 2688, 2701, "crying due to pain," trip to emergency room due to pain, describing pain level as ten out of ten at times.)

There is not substantial evidence in the record to support the ALJ's finding that the medical record is inconsistent with the severity of Plaintiff's symptoms and limitations. *See Kinsey v. Saul*, No. 20-cv-00941-BGS, 2021 WL 5771220, at *6 (S.D. Cal. Dec. 6, 2021) ("The Court finds that the record as a whole does not support the ALJ's basis for discrediting Plaintiff's complaints in the medical records regarding his Trigeminal Neuralgia."); *Ryabov*, 2017 WL 4546382, at *6 ("The record does not support the ALJ's finding that the medical evidence is inconsistent with [the claimant]'s subjective reports of [TGN] symptoms.").

PAGE 15 – OPINION AND ORDER

Further, "the ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason[.]" *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)); *see also McClaren v. Saul*, 812 F. App'x 500, 501 (9th Cir. 2020) (noting that "inconsistencies with objective medical evidence . . . cannot provide the sole basis for an ALJ's credibility determination") (citations omitted); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that even "[a]ssuming that [the claimant's] testimony regarding her physical impairments was not supported by the objective medical evidence, the ALJ cannot properly rely on that as the sole reason to discredit her testimony" (citing *Burch*, 400 F.3d at 681)).

Having found that the ALJ's only other reason for discounting Plaintiff's testimony was legally insufficient, the lack of supporting medical evidence cannot be the only reason supporting the ALJ's conclusion. *See Christa W. v. Kijakazi*, No. 1:22-cv-01293-SB, 2023 WL 6972455, at *12 (D. Or. Oct. 23, 2023) ("[T]he lack of supporting or inconsistent objective medical evidence cannot provide the sole basis for discounting a claimant's testimony." (citing *McClaren*, 812 F. App'x at 501, *Valdez*, 746 F. App'x at 677, and *Taylor*, 720 F. App'x at 907)); *Ortiz v. Berryhill*, No. 2:17-cv-06243-JDE, 2018 WL 3655411, at *4 (C.D. Cal. July 31, 2018) (reversing and remanding where "[t]he only articulated reason for finding Plaintiff only partially credible was 'the medical records do not support the alleged severity of his symptoms'"). Accordingly, the Court concludes that the ALJ committed harmful error.

## II. FAILURE TO ACCOUNT IN THE RFC FOR MISSING WORK

Plaintiff argues that the ALJ failed to include in the RFC that he would miss at least two days of work per month due to flares of his TGN pain. (Pl.'s Br. at 9.) In his opening brief, Plaintiff did not challenge the ALJ's evaluation of the medical opinion evidence. (*See id.*) Thus,

PAGE 16 – OPINION AND ORDER

Plaintiff waived any such argument. *See Avenetti v. Barnhart*, 456 F.3d 1122, 1124-25 (9th Cir. 2006) (concluding that arguments not raised by a party in an opening briefing are deemed waived (citing *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999))). To the extent that Plaintiff argues that substantial evidence does not support the ALJ's RFC determination, the Court concludes that the ALJ's exclusion of an attendance limitation is intertwined with the ALJ's evaluation of Plaintiff's symptom testimony and should be considered on remand.

## III.     REMEDY

Plaintiff asks the Court to remand for an immediate award of benefits but provides little analysis of whether the credit-as-true standard is met here. (Pl.'s Br. at 8; Pl.'s Reply at 7.) The Court remands for further administrative proceedings.

### A.     Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). In several cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for

further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

**B.     Analysis**

The Court remands Plaintiff's case for further administrative proceedings because the record has not been fully developed and further proceedings will be useful.

A district court may exercise its discretion to "remand for further proceedings if enhancement of the record would be useful." *Fahtima R. v. Comm'r of Soc. Sec.*, No. 18-5970-MJP, 2019 WL 2022461, at *4 (W.D. Wash. May 8, 2019) (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)). Plaintiff has not meaningfully argued that remand for an immediate award of benefits is appropriate here. *See Alicia D. v. Kijakazi*, No. 3:20-cv-01222-SB, 2022 WL 891786, at *11 (D. Or. Mar. 3, 2022) ("The Court must remand this case for further proceedings because Plaintiff has not met the credit-as-true standard (as she appears to acknowledge by not briefing the issue)."), *findings and recommendation adopted*, 2022 WL 888297 (D. Or. Mar. 25, 2022).

Further proceedings would serve a useful purpose because the ALJ must reevaluate the conflicting medical opinion evidence in light of Plaintiff's symptom testimony, formulate a new RFC, and obtain new VE testimony. Specifically, the ALJ should address whether Plaintiff's TGN-related limitations would result in attendance issues that would preclude employment. *See Charles H. v. Kijakazi*, No. 3:21-cv-00167-SB, 2022 WL 2802219, *10-11 (D. Or. July 18, 2022) (remanding for further proceedings where the court concluded that the ALJ committed harmful error in discounting the plaintiff's symptom testimony but where the plaintiff did not adequately develop an argument regarding the discounted medical opinion); *Graham v. Colvin*, No. 14-cv-5311-BHS, 2015 WL 509824, at *7-8 (W.D. Wash. Feb. 6, 2015) (remanding for further proceedings and explaining that although the ALJ erred in discounting the claimant's

PAGE 18 – OPINION AND ORDER

testimony, the claimant did not challenge certain conflicting medical opinions and thus there were outstanding issues in the record about the extent of the claimant's limitations); *see also Garcia v. Comm'r of Soc. Sec.*, No. 1:21-cv-00068-SAB, 2022 WL 2110709, at *11 (E.D. Cal. June 10, 2022) (remanding for further proceedings at the plaintiff's request where the court concluded that the ALJ failed to provide clear and convincing reasons for discounting the plaintiff's symptom testimony and the plaintiff did not challenge medical opinion evidence).

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 22nd day of May, 2024.

*[signature: Stacie F. Beckerman]*

HON. STACIE F. BECKERMAN
United States Magistrate Judge